UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MICHAEL SCOTT WARD d/b/a          )
FEREDONNA COMMUNICATIONS, *et al.*,  )
                                  )
        Plaintiffs,               )
                                  )
v.                                )      No.:  3:11-CV-438
                                  )            (VARLAN/SHIRLEY)
KNOX COUNTY BOARD OF              )
EDUCATION, *et al.*,              )
                                  )
        Defendants.               )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on three motions: (1) the Motion to Dismiss

Counts V, VI, and VIII of Plaintiffs' Complaint on Behalf of Defendant Scott Bacon [Doc.

26]; the Motion to Dismiss on Behalf of Mary Kerr [Doc. 29]; and Defendant, Walsworth

Publishing Co., Inc.'s Partial Motion to Dismiss Complaint or, in the Alternative, Motion for

More Definite Statement [Doc. 36].  Plaintiff responded to all three motions [Docs. 32, 33,

34, 35, 40, 41].  The Court has thoroughly considered the filings, and for the reasons stated

herein, the Court will grant in part and deny in part the Motion to Dismiss Counts V, VI, and

VIII of Plaintiffs' Complaint on Behalf of Defendant Scott Bacon [Doc. 26], grant in part,

deny in part, and deny as moot in the Motion to Dismiss on Behalf of Mary Kerr [Doc. 29],

and grant in part, deny in part, and deny as moot in part Defendant, Walsworth Publishing

Co., Inc.'s Partial Motion to Dismiss Complaint or, in the Alternative, Motion for More

Definite Statement [Doc. 36].

## I. Background

Plaintiffs commenced this civil action on September 6, 2011, seeking emergency injunctive relief, a permanent injunction, and damages [Doc. 1]. The Court previously denied plaintiffs' request for injunctive relief as well as plaintiffs' request for sequestration of proceeds [Doc. 16].

Plaintiff Michael Scott Ward ("Ward") is citizen and resident of Knox County, Tennessee [*Id*. ¶ 1]. Plaintiff WeDo Fundraising, Inc. ("WeDo Fundraising") is a Tennessee corporation and Ward is its principal shareholder [*Id*. ¶ 2]. Plaintiff PrintVenture, Inc. ("PrintVenture") was a Tennessee corporation and Ward was its principal shareholder [*Id*. ¶ 3]. Ward, WeDo Fundraising, and PrintVenture all conduct business under the trade name Feredonna Communications ("Feredonna") [*Id*. ¶ 4]. Feredonna is a publisher with over eighteen years of experience in designing, branding, publishing, printing, and distributing fund-raising materials, as well as organizing, marketing, managing, and conducting fund-raising campaigns, including fund-raising campaigns for schools and school districts in Alabama, Georgia, Ohio, and Tennessee [*Id*. ¶¶ 5–6].

Defendant Knox County is a municipal corporation organized and existing as such under the laws of the State of Tennessee [*Id*. ¶ 8]. Defendant Knox County Board of Education is an agency of Knox County and is vested with the management and control of the Knox County School system [*Id*. ¶ 7]. Plaintiff alleges it is the ultimate policy-making body with regard to all policy determinations in the operation of the school system [*Id*.].

2

Defendants Scott Bacon ("Bacon") and Mary Kerr ("Kerr") are both residents of Knox County, Tennessee, and employees of Knox County Schools [*Id*. ¶¶ 9–11]. Defendant Walsworth Publishing Company, Inc. ("Walsworth") is a corporation formed under the laws of the state of Missouri and has its principal place of business there [*Id*. ¶ 12].

In 1994, "Knox County Schools awarded Feredonna the contract for a system-wide fundraising program centered around the sale of a coupon book" [*Id*. ¶ 15]. With respect to the coupon book program, and during a period of seventeen years, Feredonna's role included assistance with merchant and sponsor recruitment, branded merchandise and materials, and other aspects of the program not traditionally provided by a printing company [*Id*. ¶ 17]. Feredonna designed a new format for the coupons and book design, introduced standardized branding and placement for merchant sponsors on the cover and throughout the book, tabbed coupons with merchant names, developed photo recognition to reward top-selling students, and developed styles guides to standardize wording and descriptions for the coupons [*Id*. ¶¶ 18–22]. Feredonna alleges its "innovations enhanced the image of the coupon books," which increased their value to Knox County Schools, and that Feredonna continues to use this "trade dress" [Doc. 1 ¶¶ 23–24]. Also, independent from the coupon book program, Feredonna contracted with Knox County Schools to provide other materials, including, for example, curriculum guides [*Id*. ¶ 16].

Feredonna alleges that it has used the trade name "School Coupons" on coupon book fund-raising products since at least 1994 [*Id*. ¶ 25]. Feredonna "sought and received federal

3

trademark registration of the 'School Coupons' mark (Supplemental Register, serial number 75365161)" [*Id.* ¶ 26]. Knox County Schools and Jefferson County, Alabama, the two markets in which Feredonna produced and published coupon book programs, were notified in writing that Feredonna was registering the "School Coupons" trade name, but neither contested the registration [*Id.* ¶¶ 27–28]. As early as 1998, "Feredonna began claiming copyright rights to the School Coupons® coupon books and their design, format, layout, and contents that they were producing for the Knox County Schools," and did so allegedly with Knox County Schools' knowledge and assent [*Id.* ¶¶ 29–30]. Knox County Schools allegedly "claimed no trademarks or copyrights related to the School Coupons® program produced by Feredonna for the Knox County Schools" [*Id.* ¶ 32]. Feredonna registered its copyright as well as the web domain "schoolcoupons.com" [*Id.* ¶¶ 31, 33]. Knox County Schools later registered the web domain "schoolcoupons.org," and Feredonna claimed infringement and demanded that the domain be relinquished to Feredonna, a request with which Knox County Schools complied [*Id.* ¶¶ 34–36]. Feredonna also owns the web domain names "schoolcoupons.net" and "schoolcoupons.info" [*Id.* ¶ 37].

Allegedly, Feredonna published the School Coupons program for both private and parochial schools and school districts throughout East Tennessee, including Knox County Schools, as well as in Birmingham, Alabama, Cleveland, Ohio, and Nashville, Tennessee [*Id.* ¶¶ 38–39]. With respect to Knox County Schools, as the relationship developed, "an unwritten division of responsibilities also developed," wherein "Knox County was

4

responsible for merchant recruitment for the book inside Knox County, and Feredonna was responsible for merchant recruitment outside Knox County, and for any regional or national merchant accounts," in addition to its role in designing, developing, and publishing the materials [*Id*. ¶ 40].

Plaintiffs allege that, at several events, Bacon "tried to claim credit for the School Coupons® program" [*Id*. ¶ 42]. Bacon allegedly referred to Feredonna as "merely the printer" of the book [*Id*. ¶ 43]. Ward allegedly corrected him when such statements were made in his presence, "noting that Feredonna developed, produced, and published the School Coupons® coupon book on behalf of its client, Knox County Schools, and that Bacon was an employee of Knox County Schools" [*Id*. ¶ 44].

In March 2008, a meeting was held between Feredonna and Knox County Schools to discuss the upcoming twentieth anniversary of the coupon program; Bacon, Kerr, Ward, and Alanna Fletcher, an employee of Ward's, were present [*Id*. ¶¶ 45–46]. Ward allegedly "suggested that the 20th anniversary campaign provided an opportunity to raise the price of the School Coupons® book . . . and to introduce a new discount card program that could be developed into a spin-off fundraising campaign" [*Id*. ¶ 47]. The discount card program proposal was "to add a loyalty-card style discount card into the School Coupons® book that could be removed and used at the participating merchants' businesses repeatedly and, thus, add to the overall value of the product" [*Id*. ¶ 49]. Ward sought to introduce the discount card because "many fundraising companies offer more than one product so as to better meet

5

the needs of schools that traditionally hold two or more fundraisers per year" [*Id*. ¶ 48]. Bacon allegedly refused the suggestion of a price increase, but expressed serious interest in the discount card proposal, indicating that "he wanted 'full control' and 'ownership' over it"; Ward understood this statement to mean Bacon would have to receive some sort of financial interest or benefit in order to approve any discount card program [*Id*. ¶¶ 50–52].

Ward continued developing the discount card concept as a stand-alone product, "with the goal of introducing it as a spring fundraising program" [*Id*. ¶ 53]. Ward finalized the concept by January 2009 and began recruiting merchants for participation [*Id*. ¶ 55]. In April 2009, Ward received a telephone call from Bacon, in which Bacon allegedly informed Ward that he "'caught wind' of Ward's efforts to develop a working prototype of the card product, and he was furious" [*Id*. ¶ 57]. Bacon allegedly "threatened that no schools would sell the discount card without Bacon's 'involvement' and 'ownership,'" which Ward understood to mean "personal benefit" [*Id*. ¶¶ 58–59].

A week later, a meeting was held; present at the meeting was Bacon, Kerr, and Ward [*Id*. ¶ 60]. Allegedly, Bacon was "belligerent that Ward had developed the discount card project without Bacon's personal involvement" and demanded "ownership" of the card [*Id*. ¶¶ 61–62]. Although most fund-raising companies pay only twenty-five to fifty percent of campaign revenue to the campaign beneficiary, Ward offered Knox County Schools eighty percent of the proceeds raised through the sale of the discount cards [*Id*. ¶¶ 63–64]. Bacon made comments regarding the cost of producing, and Ward interpreted his comments as

6

Bacon wanting to reap profits personally as a middle-man re-selling to Knox County Schools or the one credited for the program [*Id*. ¶¶ 66–67]. Allegedly, all subsequent offers of the discount program were "rebuffed" [*Id*. ¶ 70]. Plaintiffs allege that, upon information and belief, Bacon is contemplating copying Ward's concept and developing a similar discount card program himself [*Id*. ¶ 68].

After the April 2009 meeting, "Feredonna's representatives began encountering merchants who refused to participate in the discount card program specifically because of information received from Bacon and Kerr" [*Id*. ¶ 71]. Upon information and belief, plaintiffs allege that "Bacon and Kerr worked together to derail the discount card program by, among other things, discouraging merchant participation and tortiously inserting themselves into Feredonna's relationships with its clients" [*Id*. ¶ 72]. Allegedly, Knox County Schools denied Feredonna access to contact information for merchants participating in the coupon program by altering and cutting contract documents, at the direction of Bacon and Kerr [*Id*. ¶¶ 73–75].

In May 2009, Ward met with Russ Oakes ("Oakes"), Bacon's immediate supervisor; Ward "discussed ways to streamline coupon book merchant recruitment, offered the discount card program to Knox County Schools again at a greatly reduced rate, raised the issue of Bacon's and Kerr's destruction of documents, and otherwise informed him that Bacon's and Kerr's insertion of themselves into Feredonna's business dealings was inappropriate at best" [*Id*. ¶¶ 76–77]. Subsequent to the meeting, Ward's working relationship with Oakes

7

"chilled," and Oakes "cancelled a major printing project for school curriculum guides that Feredonna had produced for many years" [*Id*. ¶¶ 78–79]. Knox County Schools also did not exercise its "option to renew the contract for print management and design services under which the school curriculum guides and other materials had been produced" [*Id*. ¶ 80].

Feredonna continued the discount card program in East Tennessee, hiring eight sales representatives [*Id*. ¶ 83]. Allegedly, it was well received; however, days after the beginning of initial sales calls, an undated memo, allegedly sent at Bacon's direction, "went out to all Knox County schools directing them to not do business or have any contact with Feredonna because it was purportedly not an approved vendor" [*Id*. ¶¶ 84–85]. At the time the memo was distributed, Feredonna's vendor account was listed as "PrintVenture Inc., also DBA Feredonna" [*Id*. ¶ 86]. On November 20, 2009, an attorney for Feredonna sent a letter to Knox County Schools, demanding immediate retraction of the memo; however, Knox County Schools stood by the memo [*Id*. ¶¶ 88, 90]. Allegedly, as a result of the memo, one of Feredonna's sales representatives was informed that Feredonna was merely the printer and that Knox County Schools owned "School Coupons" [*Id*. ¶ 91]. Feredonna allegedly lost $250,000 in sales of the discount card in 2010 [*Id*. ¶ 92].

Upon defendants' alleged insistence, Knox County cancelled PrintVenture's approved vendor status due to back business tangible personal property taxes owed [*Id*. ¶ 93]. Plaintiffs claim that such tax issues had been addressed almost ten years prior, and had been resolved; further, PrintVenture received no correspondence regarding the alleged tax issues

8

and the tax issue had never been an impediment to PrintVenture servicing contracts with Knox County, including the contract for the school coupon program [*Id*. ¶¶ 94–96]. Allegedly, Hugh Holt ("Holt"), Knox County's Director of Purchasing, informed Ward that Bacon had raised the tax issue in an effort to cancel PrintVenture's vendor status, and Holt informed Ward that Knox County Schools' counsel had determined that the tax issue was sufficient grounds to terminate PrintVenture's vendor status [*Id*. ¶¶ 97–98]. As a result, PrintVenture could not bid on new business from Knox County Schools or Knox County, and allegedly, all efforts by PrintVenture to resolve the issue have been rebuffed [*Id*. ¶¶ 99–100].

After PrintVenture lost its approved vendor status in late 2009, Jeffrey Hobbs ("Hobbs") assisted Ward in investigating the process by which businesses can be added to or removed from the approved vendor list [*Id*. ¶ 101]. According to plaintiffs, Knox County maintains an online application system for vendors to become approved [*Id*. ¶ 102]. Hobbs began the process of registering Jireh Group, LLC ("Jireh Group"), a Tennessee limited liability company he owns [*Id*. ¶ 103]. The online registration system asked for basic information about the business, but nothing required credit information or character references [*Id*. ¶¶ 104–05]. Hobbs had difficulty completing the registration application and called the help number provided online; he spoke with a representative from Knox County who informed him, upon Hobbs's inquiry, that fraud, criminal activity, and similar issues would be the only legitimate reason for removing a business from the approved vendor list [*Id*. ¶¶ 106–10]. He also inquired whether there was a separate vendor list that he had to join

in order for Jireh Group to solicit Knox County Schools for the sale of fund-raising products, and the representative answered in the negative, a response different from what Martha McCampbell ("McCampbell"), Knox County Schools' counsel, had asserted previously during a meeting with Ward and Cole [*Id*. ¶¶ 111–13].

Upon information and belief, plaintiffs assert that no such approved fund-raising list existed at that time or currently, and that no other fund-raising company conducting business in Knox County has been asked to submit to such a process [*Id*. ¶¶ 115–16]. Further upon information and belief, plaintiffs allege that the memo sent to schools directing schools not to do business with Feredonna and the attempt to require Feredonna to submit to an approval process, was without precedent and directed at denying Feredonna the opportunity to conduct business with Knox County Schools [*Id*. ¶ 117].

According to plaintiffs, despite not participating in Feredonna's discount card program, Knox County Schools proceeded with the sale of plaintiffs' "School Coupons" book in 2009 [*Id*. ¶ 119]. When it went on sale in September 2009, signage at schools did not include either the "School Coupons" logo as it had in prior years, but instead used "Knox County Schools Coupon Book" [*Id*. ¶ 120]. Also, Bacon allegedly failed to include the registered mark with the "School Coupons" logo, and frequently used an incorrect type font as a logo; Feredonna repeatedly sent correspondence and corrected logo artwork in response [*Id*. ¶¶ 121–22].

In January 2010, Bacon and Kerr allegedly sent a letter on behalf of Knox County Schools to past-participating merchants in the school coupons program claiming credit for the school coupons program and diminishing Feredonna's ownership and contributions [*Id*. ¶¶ 124–25]. The letter also announced an intention to "re-brand" the school coupons program [*Id*. ¶ 126]. A follow-up letter was sent on February 5, 2010, which allegedly sought to steal all credit for past program success and included several damaging and false statements [*Id*. ¶¶ 127–28]. The letter claimed that "the product that has been known as the School Coupons Campaign will now be known as the Knox County Schools Coupon Book" and used the language "Same Book, New Look" [*Id*. ¶ 129]. Feredonna responded in writing, warning Knox County Schools that it was infringing upon Feredonna's trademark and copyright rights and demanded Knox County Schools cease and desist from going forward with plans to produce a rival coupon book [*Id*. ¶ 131].

Feredonna copied Knox County Mayor Ragsdale on the cease and desist letter, and his office scheduled a meeting [*Id*. ¶¶ 132–33]. Ward, Cole, Mayor Ragsdale, and the County Law Director attended the meeting [*Id*. ¶ 134]. Allegedly, Mayor Ragsdale "stated something to the effect that:

> What I want to know is why are we suddenly not doing business with this guy who has done a great job for us for over fifteen years. In the time I've been Mayor, I have not heard anything but good things about him. Well, I started asking around and the word I'm hearing in the halls is that we have a Knox County employee nearing retirement age and he is posturing himself to take over the program when he retires and needs Mr. Ward out of the picture. I'm not really sure how I feel about that.

11

[*Id*. ¶ 135].  Similar statements allegedly were made in an earlier meeting with Ward and Hobbs, and the parties allegedly understood the employee to be Bacon [*Id*. ¶¶ 136–37].

Meanwhile, Feredonna was actively recruiting merchants for the 2010 School Coupons program for the Greater East Tennessee edition on behalf of schools in Knox County and surrounding counties [*Id*. ¶ 138].  Merchants that had dealt with Feredonna almost exclusively responded quickly and affirmatively, while merchants who had dealt primarily with Bacon and Kerr did not renew their participation [*Id*. ¶¶ 139–40].  Several such merchants informed Ward that they would not participate in plaintiffs' school coupons program because of what they had heard about Feredonna from Bacon and Kerr [*Id*. ¶ 141]. Also, area McDonald's franchisees reneged on their sponsorship commitment, stating they wanted to participate only in the Knox County Schools program [*Id*. ¶ 144].  Approximately twenty-five merchants out of 230 previously-participating merchants did not participate in plaintiffs' school coupons program [*Id*. ¶ 142].   Allegedly, this refusal to participate decreased the perceived value of the book and resulted in lower sales [*Id*. ¶ 143].

In 2011, Feredonna began recruiting for its 2011 School Coupons program [*Id*. ¶ 146]. Feredonna representatives and Ward were informed by merchants who chose not to renew their participation that they wanted to participate only in the original or county book, and others informed them that they would not renew their participation as a result of a letter they received from Knox County Schools [*Id*. ¶¶ 146–47].  Others informed them that Bacon and Kerr told them not to participate [*Id*. ¶ 148].  Upon information and belief, plaintiffs allege

12

that Bacon and Kerr pressured merchants to not participate in plaintiffs' school coupons program, suggesting that it might influence their decision to include them in Knox County's school coupon book [*Id*. ¶ 149].

Plaintiffs also allege that, in late 2009, Feredonna bid on the Knox County Schools 2010 coupon book and proffered a proposal to extend the terms of the contract with Knox County Schools and to commit to a three-year price freeze, among other incentives, which would have saved Knox County Schools as much as $100,000 per year [*Id*. ¶ 150]. Knox County allegedly received no qualified bid for less than the amount of Feredonna's proposal [*Id*. ¶ 152]. Plaintiffs allege upon information and belief that Bacon directed Knox County to rebid the project rather than consider Feredonna's proposal [*Id*. ¶ 153]. The specifications for the coupon book requested in that bid were identical to those previously published by Feredonna for Knox County Schools, but the bidding and evaluation criteria changed from prior bids to rely solely on price [*Id*. ¶¶ 154–55]. Knox County Schools requested that Feredonna submit a proposal, and reinstated PrintVenture's vendor status [*Id*. ¶¶ 156–58]. PrintVenture and WeDo Fundraising submitted identical bids, but Walsworth submitted a bid with a significantly lower price and received the contract [*Id*. ¶¶ 159–60]. After the rebidding, Knox County again cancelled PrintVenture's vendor status [*Id*. ¶ 167].

According to plaintiffs, Bacon later falsely stated that the lower price was the only reason for ending the relationship with Feredonna [*Id*. ¶¶ 161–62]. Ward independently contacted Walsworth to request a price quote and received a quote double than the bid

Walsworth offered to Knox County Schools; thus, plaintiff alleges, upon information and belief, Walsworth bid the Knox County Schools' coupon book project below cost for the 2010–11 program so that it could substantially raise prices for subsequent years or gain leverage on other printing for Knox County Schools [*Id*. ¶¶ 163–64]. Ward also contacted a printer whose bid was rejected because it could not cut the coupon books apart after printing and binding [*Id*. ¶ 165]. Ward allegedly learned that the rejected bidder suggested to Bacon a plan for printing the books and sending them to Feredonna's bindery for finishing, but Bacon rejected the idea, stating he would not do business with Ward [*Id*. ¶ 166].

Plaintiffs further allege defendants created and distributed a coupon book that appropriates material trademarked and copyrighted by Feredonna (the "2010 Book") [*Id*. ¶ 168]. Plaintiffs allege that the 2010 Book misrepresented the Knox County Schools Coupon Book as "School Coupons," and was "strikingly" similar in format, layout, and coupon design to plaintiffs' school coupons book [*Id*. ¶ 169, 172]. For example, like plaintiffs' school coupons book, the 2010 Book was rectangular and approximately check-sized in shape with the same dimensions, featured the logo of the presenting sponsor on the bottom center of the front cover, displayed the logos of other major sponsors on the bottom center of the front cover, included a photograph of a top-selling student, and provided that it was "The Original Knox County Schools Coupon Book Established in 1989" [*Id*. ¶¶ 173–76, 188]. Likewise, plaintiffs allege defendants created a coupon book for distribution in 2011 (the "2011 Book"), which also is rectangular and approximately check-sized in shape,

features the logo of the presenting sponsor on the bottom center of the front cover, displays the logos of other major sponsors on the bottom center of the front cover, includes a photograph of a top-selling student, and provides that it is "The Original Knox County Schools Coupon Book Established in 1989" [*Id*. ¶¶ 179–83, 188].

Plaintiffs allege that defendants advertised the 2010 Book as "SAME BOOK, NEW LOOK" and admitted through press releases that the 2010 Book was so similar to other books on the market that one should be cautious as to which book was produced by Knox County Schools [*Id*. ¶¶ 189–90]. Plaintiffs also allege that Knox County Schools earned a profit of $1,319,832.50 from sales of the 2010 Book, and stand to similarly benefit from the sales of the 2011 Book as a result of their misappropriation of Feredonna's trademarked and copyrighted materials [*Id*. ¶¶ 192–93]. Finally, plaintiffs allege that, in 2011, defendants began to solicit schools outside of Knox County to sell the 2011 Book [*Id*. ¶¶ 194–96].

On the basis of these allegations, plaintiffs assert eight claims: Trademark and Trade Dress Infringement (Count I); Copyright Infringement (Count II); Unfair Trade Practices (Count III); Tortious Interference (Count IV); Libel (Count V); Defamation and Slander (Count VI); Conversion (Count VII); and Civil Extortion (Count VIII) [*Id*. ¶¶ 207–55].

## II.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

15

[opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, —, 129 S. Ct. 1937, 1949 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).  "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (citation omitted).

## III.    Bacon's Motion to Dismiss

Bacon moves the Court to dismiss plaintiffs' claims for libel (Count V), defamation and slander (Count VI), and civil extortion (Count VIII) pursuant to Rule 12(b)(6) of the

16

Federal Rules of Civil Procedure [Doc. 26]. Bacon submits that the libel and defamation claims are barred by the applicable statutes of limitations, or alternatively are vague and unanswerable, and that Tennessee does not recognize a cause of action for civil extortion [*Id.*].

## A.     Libel Claim (Count V) and Defamation and Slander Claim (Count VI)

Bacon asserts the complaint alleges that libelous statements were made by Bacon:

- sometime in 2009 subsequent to when Bacon allegedly provided information to merchants who refused to participate in Ward's discount card program;

- when Bacon sent out and/or authorized an undated memorandum be sent out sometime before November 20, 2009;

- when defendants engaged in a "misinformation campaign" in late 2009; and

- when Bacon sent out letters in January and February of 2010

[Doc. 27 (citing Doc. 1 ¶¶ 71–72, 84–91, 124–28)]. Bacon submits that the statute of limitations for a claim of libel, or written defamation, is one year from the time of publication of the statement, and that all of these statements were made more than one year before the filing of the complaint on September 6, 2011 [*Id.*].

Bacon also asserts the complaint alleges that slanderous statements were made by Bacon:

- prior to March 2008;

- during a meeting in March 2008;

- during an April 2009 phone conversation between Bacon and Ward;

17

- during a meeting held sometime in April 2009;

- sometime in 2009 subsequent to the April 2009 meeting;

- when Bacon sent out and/or authorized an undated memorandum that was sent out sometime before November 20, 2009;

- when defendants engaged in a "misinformation campaign" in late 2009; and

- when Bacon sent out letters in January and February of 2010

[Doc. 27 (citing Doc. 1 ¶¶ 42–44, 50–52, 57–59, 61–62, 66, 71–72, 84–86, 88, 91, 124–28)]. Bacon submits that the statute of limitations for a claim of oral defamation, or slander, is six months from the time of the publication of the statement, and that all of these statements were made more than six months before the filing of the complaint on September 6, 2011 [*Id*.].

"The law of defamation includes both slander, which is spoken, and libel, which is written." *Watson v. Fogolin*, No. M2009-00327-COA-R3-CV, 2010 WL 1293797, at *4 (Tenn. Ct. App. Apr. 1, 2010) (citation omitted). Defendant is correct that the applicable statute of limitations for libel is one year, Tenn. Code Ann. § 28-3-104(a)(1), and that the applicable statute of limitations for slander is six months, Tenn. Code Ann. § 28-3-103, and plaintiffs do not dispute such [*See* Doc. 33]. Rather, plaintiffs assert that the "gravamen" of their libel and slander claims is that Bacon, along with Kerr, "engaged in a campaign of lies to pressure merchants into not participating in [the] School Coupons® program . . . and to discourage schools . . . from fundraising with School Coupons®" [*Id*.]. They recognize that while Bacon's misinformation campaign began outside the statute of limitations, it

18

"continued through to times within the statute of limitations, and indeed to the present day"

[*Id.*]. In support, plaintiffs point to the following allegations in the complaint:

- "In 2011, when Feredonna began actively recruiting for the 2011 School Coupons® book, Feredonna's representatives as well as Ward encountered merchants who declined to renew their participation in the School Coupons® program, many stating they were only participating in the 'original' or 'County' book";

- "Several merchants told Feredonna representatives that they would not renew their participation in the 2011 School Coupons® program because of a letter they received from Knox County Schools";

- "Upon information and belief, this default and other cancellations were the direct result of disinformation spread by the [d]efendants";

- "[d]efendants made false and defamatory statements about [p]laintiffs in memoranda and letters sent to schools and merchants"; and

- "[d]efendants made false and defamatory statements about [p]laintiffs in contacting school officials and merchants"

[Doc. 33 (citing Doc. 1 ¶¶ 145–47, 241, 244)]. These allegations, however, fail to identify any statements, written or oral, that Bacon made within the applicable statute of limitations periods. Moreover, "Tennessee courts have never recognized a 'continuing defamation.'" *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *5 (Tenn. Ct. App. May 14, 2008) ("In fact, this Court has previously commented on the dubiousness of the very concept of a 'continuing defamation.'" (citation omitted)).

Plaintiffs also point to the affidavit of Aaron Schmissrauter, attached as Exhibit 6 to plaintiffs' complaint, which states that Cocoa Moon Café and SAS Shoes, two merchants that participated in the plaintiffs' school coupons program in 2010, "declined to renew their

19

participation in the School Coupons® program for 2011–12" around July and August of 2011 [Doc. 1-1 Ex. 6]. Mr. Schmissrauter asked the merchants why they did not renew, and "both owners told [him] it was because they had received a letter from the Knox County School District about its coupon book program. They did not show [him] the letter, but they did tell [him] that after reading it they were no longer comfortable with participating in the Schools Coupons® book" [*Id.*]. Plaintiffs argue that this letter "presumably [came] from" Bacon [Doc. 33]. There, however, are no allegations to this effect and there are no allegations pertaining to when the letter may have been sent, even if it was from Bacon; indeed, just because Mr. Schmissrauter met with these merchants in July and August of 2011 does not mean that the letter from Knox County Schools, even if from Bacon, was issued at that time or any time after September 6, 2010.

In sum, the Court finds that plaintiffs' libel and slander claims against Bacon are barred by the applicable statutes of limitations. These claims will be dismissed.[1]

## B.     Civil Extortion Claim (Count VIII)

Bacon asserts that Tennessee does not recognize a cause of action for civil conspiracy, citing *Perry v. Conley*, No. 02A019812CV00369, 1999 WL 270430 (Tenn. Ct. App. May 5, 1999) [Doc. 27]. Plaintiffs counter that "other [c]ourts in Tennessee have permitted an extortion claim to proceed when pleaded as part of a civil conspiracy," citing *Vafaie v. Owens*, No. 92C-1642, 1996 WL 502133 (Tenn. Ct. App. Sept. 6, 1996), and *In re Prebul*,

---

[1]In light of the Court's determination, the Court need not address Bacon's alternative argument.

No. 09-14010, 2011 WL 2947045 (Bankr. E.D. Tenn. July 19, 2011) [Doc. 33]. They maintain that so long as they allege that criminal extortion has occurred and the elements of a civil conspiracy, they may proceed with their claim [*Id.*].

The Court notes that Tennessee has never recognized a cause of action for civil extortion. *See*, *e.g.*, *Perry*, 1999 WL 270430, at *4 ("We know of no statutory or common law authority—except in states where statutes provide for civil penalties for the crime of extortion—which would allow [the plaintiff] to recover damages for 'extortion' . . . under these facts."). One Tennessee court has, however, "permitted an extortion action to proceed when pleaded as part of a civil conspiracy." *In re Prebul*, 2011 WL 2947045, at *5. In *Vafaie v. Owens*, the plaintiff alleged a civil conspiracy, which is "a 'combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means.'" 1996 WL 502133, at *7 (citation omitted); *see also id.* (noting that "[t]he requisite elements of the cause of action are common design, concert of action, and an overt act" and that there must be "[i]njury to person or property, resulting in attendant damage"). The Court of Appeals of Tennessee found that the plaintiff "alleged facts in her complaint that, if proven true, could have constituted a cause of action for civil conspiracy" "'to accomplish by concert' the unlawful purpose of extorting money." *Id.* The United States Bankruptcy Court for this district recently had the opportunity to address these two cases and presumed that a civil extortion action could "be

brought where (1) criminal extortion has occurred, and (2) the elements of a civil conspiracy are present." *In re Prebul*, 2011 WL 2947045, at *5.

In light of *Vafaie* and *In re Prebul*, the Court finds defendant's argument without merit at this time. Here, plaintiffs allege that Bacon and Kerr participated in concert "to cancel [p]laintiffs contracts with Knox County Schools, remove [p]laintiffs from Knox County's approved vendor list, and take further actions to harm [p]laintiffs [sic] business" [Doc. 1 ¶ 252]. They further claim that defendants acts of extortion, specifically Bacon "using his position of public employment to demand a payment or compensation in return for the privilege of conducting business with Knox County Schools," constituted an overt act [*Id*. ¶ 251; *see also id*. ¶¶ 51–52, 58–59, 69]. Plaintiffs also allege they were damaged through the loss of sales [*See id*. ¶ 92].

Bacon's motion to dismiss the civil extortion claim (Count VIII), therefore, will be denied.

## IV.    Kerr's Motion to Dismiss

Kerr moves the Court, pursuant to Rule 12(b)(6), to dismiss the complaint against her [Doc. 29]. She asserts with respect to Counts IV through VII that she is immune pursuant to the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. § 29-20-101–29-20-408, and that such claims are barred by the applicable statutes of limitation [Doc. 30].[2] With respect to Count III, Kerr asserts she is immune to the extent that it is a common

---

[2]The Court notes that Bacon did not move for dismissal pursuant to the TGTLA.

law claim, and alternatively, that the claim should be dismissed because it is not based upon any state or federal statute [*Id.*].[3]

Turning first to Kerr's assertion that she is immune from Counts IV through VII—claims for tortious interference, libel, defamation and slander, and conversion, respectively—pursuant to the TGTLA, particularly section 29-20-205, the Court recognizes that the TGTLA provides that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary," Tenn. Code Ann. § 29-20-201. "Governmental entity" is defined to include, among other entities, school districts. Tenn. Code Ann. § 29-20-102(3)(A). The TGTLA, however, removes immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment," Tenn. Code Ann. § 29-20-205, except with respect to certain enumerated actions or omissions, including "those specified torts enumerated in subsection (2)," *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001). Subsection (2) allows for immunity when the injury arises out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious

---

[3]Kerr also asserts that, by agreement of the parties, Counts I and II should proceed as claims against Knox County and the Knox County Board of Education [Doc. 29]. The Court entered the parties' agreed order, dismissing Bacon and Kerr in their official capacities [Doc. 47]; therefore, it need not address this point [*See* Doc. 35 (plaintiff acknowledging that Counts I and II are "encompassed within the Agreed Order among the parties that such claims will proceed directly against Knox County and the Knox County Schools")]. Kerr does not, as plaintiffs point out, move for dismissal of Count VIII [*See id.*].

23

prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205(2). "An individual employee of a governmental entity is immune when the governmental entity for which he works is immune from suit, unless the employee's act or omission was willful, malicious, criminal, or performed for personal financial gain . . . ." *Autry v. Hooker*, 304 S.W.3d 356, 363 (Tenn. Ct. App. 2009); Tenn. Code Ann. § 29-20-310(c).

Plaintiffs assert three reasons why Kerr is not immune; two of these arguments lack merit [Doc. 35]. First, plaintiffs argue that Kerr's conduct was willful, wanton, and grossly negligent and thus immunity is precluded pursuant to Tenn. Code Ann. § 29-20-201(b)(2) [*Id.*]. That section provides:

> All members of boards, commissions, agencies, authorities, and other governing bodies of any governmental entity, created by public or private act, whether compensated or not, shall be immune from suit arising from the conduct of the affairs of such board, commission, agency, authority, or other governing body. Such immunity from suit shall be removed when such conduct amounts to willful, wanton, or gross negligence.

Tenn. Code Ann. § 29-20-201(b)(2). There are no allegations that Kerr is a member of a governing body of any governmental entity; thus, the Court finds this section has no application here. Second, plaintiffs argue that in operating a coupon book program, Knox County Schools is not performing a government function [*Id.*]. Plaintiffs, however, fail to

24

recognize that immunity applies to "governmental *or proprietary*" functions. Tenn. Code Ann. § 29-20-201(a) (emphasis added).

Finally, plaintiffs argue that Kerr has a financial stake in Knox County Schools' coupon book program, as evidenced by Russ Oakes's testimony from the hearing on plaintiffs' request for injunctive relief. As stated, an employee of a governmental entity, like Kerr, is not immune if her acts are performed for personal financial gain. *Autry*, 304 S.W.3d at 363; Tenn. Code Ann. § 29-20-310(c). In light of plaintiffs' allegations and this exception to immunity, the Court finds dismissal on the basis of immunity inappropriate at this time.

Kerr also argues that Counts IV through VII are barred by the one year statute of limitations set forth in Tenn. Code Ann. § 29-20-305 to the extent that they relate to any activities that occurred prior to September 6, 2010 [Doc. 30]. Likewise, Kerr argues that plaintiffs' libel and defamation and slander claims are barred by the statutes of limitation set forth in Tenn. Code Ann. §§ 28-3-103 and 28-3-104 [*Id.*]. She claims the only allegations in the complaint that address her are:

- that she attended a meeting in March 2008 at which Ward proposed a new discount card program that Knox County Schools' did not accept;

- that, in the spring of 2009, she discouraged merchant participation in the discount card program and destroyed documents that denied information to plaintiffs;

- that she persuaded other Knox County employees to discontinue school curriculum guides in the spring of 2009;

- that she signed a letter in January 2010 portraying plaintiffs in a negative light;

25

- that she sent a follow-up letter February 5, 2010, which contained damaging and false statements about plaintiffs;

- that she made statements about the Knox County Schools' coupon book to the media in September 2010; and

- that, in 2011, she told people not to participate in plaintiffs' coupon book program

[*Id.* (citing Doc. 1 ¶¶ 71–75, 81, 124–26, 127–29, 148, 190, Ex. 11)].

Plaintiffs did not respond to Kerr's argument concerning the applicability of Tenn. Code Ann. § 29-20-305; instead, plaintiffs assert the same opposition to the applicability of the statutes of limitation set forth in Tenn. Code Ann. §§ 28-3-103 and 28-3-104 as they did with respect to Bacon's argument (indeed, the response is almost verbatim) [*See* Docs. 33, 35]. The Court has already found those arguments without merit and now finds the same as to Kerr. Accordingly, and because plaintiffs failed to oppose the applicability of § 29-20-305, the Court will dismiss Counts IV through VII against Kerr as time barred, with one exception. *See* E.D. Tenn. L.R. 7.2 (noting that failure to respond may be deemed waiver of opposition). Plaintiff herself recognizes that the complaint asserts she made statements to the media about the Knox County Schools' coupon book and plaintiffs' coupon book that were published on September 9, 2010 [*See* Doc. 1 ¶ 190, Ex. 11]. Accordingly, the Court cannot find that plaintiffs' claim for libel against Kerr is time barred, either under Tenn. Code Ann. § 29-20-305 or Tenn. Code Ann. § 28-3-104, both of which provide for a one year statute of limitations.

26

Kerr's final argument concerns Count III. Plaintiffs, however, assert that Count III is encompassed within the agreed order, dismissing Bacon and Kerr in their official capacities [Doc. 47], and that Count III "will proceed directly against Knox County and the Knox County Schools" [Doc. 35]. Accordingly, the Court need not address this argument.

## V.     Walsworth's Motion to Dismiss

Walsworth moves the Court, pursuant to Rule 12(b)(6), to dismiss Counts III through VIII [Doc. 36]. Walsworth maintains that the complaint fails to state these claims against it and that the claims for unfair trade practices (Count III) and civil extortion (Count VIII) are not recognized under Tennessee law [*Id.*]. In response to the motion, plaintiffs withdrew "Counts IV–VIII . . . as to Walsworth without prejudice to re-filing of same" pursuant to Rule 41(a) [Docs. 40, 41]. Neither a reply brief nor any other response was filed, so the Court assumes Walsworth has no objection to the withdrawal of these claims without prejudice. Accordingly, these claims will be dismissed without prejudice as to Walsworth.

That leaves for the Court's consideration only defendant's argument that Count III— unfair trade practices—should be dismissed. Walsworth asserts that "[n]owhere in the [c]omplaint is a state or federal statute cited or relied upon in support of [p]laintiffs' 'unfair trade practices' claim" [Doc. 37]. Further, Walsworth asserts that "[t]here is no Tennessee common law claim for 'unfair trade practices'" [*Id.*].

In response, plaintiffs assert that Tennessee recognizes an action for unfair trade practices [Doc. 41]. Specifically, plaintiffs point to Tenn. Code Ann. § 47-18-104, which

prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce" and provides a private right of action for those economically harmed by unfair trade practices [*Id.*].

While the complaint may not identify any statute, state or federal, upon which plaintiffs rely for their unfair trade practices claim, the allegation set forth under Count III ("Defendants have engaged in unfair and deceptive acts affecting the conduct of trade or commerce . . . .") [Doc. 1 ¶ 230] mimics the language set forth in the Tennessee Consumer Protection Act of 1977, specifically Tenn. Code Ann. § 47-18-104(b) ("The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part . . . ."). And Tenn. Code Ann. § 47-18-109 provides for a private right of action for violation of Tenn. Code Ann. § 47-18-104, along with treble damages, which plaintiffs request with respect to Count III. Thus, some basic research would have revealed that plaintiffs were attempting to assert a claim pursuant to the Tennessee Consumer Protection Act of 1977. Although plaintiffs perhaps should have titled Count III something else (e.g., Tennessee Consumer Protection Act Claim) or referred to the statute, the Court does not find their failure to do so warrants dismissal of the claim at this time, given their identification of the relevant statute in response to the motion to dismiss and that the language employed in the complaint provides notice of this type of claim. *See Minger v. Green*, 239 F.3d 793, 801 (6th Cir. 2001) (noting that "dismissal on the basis of

a mislabeled claim is not warranted as long as correction of the legal theory does not prejudice the opposing party").[4]

Walsworth alternatively moves the Court, "[i]n the event [the] Court does not grant [its] motion to dismiss for failure to state a claim," to "order [p]laintiffs to submit a more definite statement of its causes of action against Walsworth versus all of the defendants lumped together" [Doc. 37]. Plaintiffs did not respond to this alternative request [*See* Doc. 41 (addressing only Walsworth's motion to dismiss despite setting forth the standard of review for a motion for a more definite statement)]. Accordingly, and in light of defendant's argument pertaining to dismissal of Count III, the Court will grant Walsworth's alternative request for a more definite statement. *See* E.D. Tenn. L.R. 7.2 (noting that failure to respond may be deemed waiver of opposition). Plaintiff will be directed to file an amended complaint designed to address he defects complained of within fourteen (14) days of the entry of this order.

## VI.    Conclusion

For the reasons explained herein, the Court hereby **GRANTS in part and DENIES in part** the Motion to Dismiss Counts V, VI, and VIII of Plaintiffs' Complaint on Behalf of Defendant Scott Bacon [Doc. 26]; **GRANTS in part, DENIES in part, and DENIES as moot in part** the Motion to Dismiss on Behalf of Mary Kerr [Doc. 29]; and **GRANTS in**

---

[4]The Court finds that Walsworth is not prejudiced here because plaintiff identified the statute upon which it relies in its response to Walsworth's motion to dismiss. Also, Walsworth had an opportunity to submit a reply addressing the claim in light of the statutory citation, *see* E.D. Tenn. L.R. 7.1(a), but did not do so.

**part, DENIES in part, and DENIES as moot in part** Defendant, Walsworth Publishing

Co., Inc.'s Partial Motion to Dismiss Complaint or, in the Alternative, Motion for More

Definite Statement [Doc. 36]. As to Bacon, Count V and Count VI are hereby **DISMISSED**;

as to Kerr Counts IV, VI, and VII are hereby **DISMISSED**; and as to Walsworth, Counts IV,

V, VI, VII, and VIII are hereby **DISMISSED**. Plaintiff is **DIRECTED** to file an amended

complaint designed to address the defects complained of by Walsworth within **fourteen (14)**

**days** of the entry of this order.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE